# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Norfolk Division

LINDA JARRELL-HENDERSON, and

DANIEL PRINCE,

       Plaintiffs,

v.                                    ACTION NO. 2:07cv432

LIBERTY MUTUAL FIRE INSURANCE
COMPANY, and

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

       Defendants.

## REPORT AND RECOMMENDATION

This matter was referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and (C) and Rule 72(b) of the Federal Rules of Civil Procedure, as well as Rule 72 of the Rules of the United States District Court for the Eastern District of Virginia, by order of reference entered September 15, 2008.

This case was referred for a Report and Recommendation on (1) Liberty Mutual Insurance Company's ("Liberty Mutual's") motion for summary judgment [Doc. 23], (2) Linda Jarrell-Henderson's ("Plaintiff's") motion for summary judgment [Doc. 27], and (3) Plaintiff's motion to strike the affidavit of Patrick Wasson [Doc. 30]. For the reasons stated herein, the Court recommends that Liberty Mutual's motion for summary judgment be GRANTED, Plaintiff's motion for summary judgment be DENIED, and Plaintiff's motion to strike the affidavit be GRANTED in part and DENIED in part.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of a motor vehicle accident that occurred in Portsmouth, Virginia. On November 7, 2006, an uninsured motorist crossed over the median of Interstate 664 and collided with Plaintiff, who was driving a vehicle owned by her employer, Ikon Office Solutions, Inc. ("Ikon"). Daniel Prince was a passenger in the vehicle driven by the Plaintiff. As a result of the collision, both the Plaintiff and Daniel Prince were injured.

Liberty Mutual issued a policy of motor vehicle liability insurance to Ikon on or about April 1, 2006, which was in effect at the time of the accident. (Compl. ¶¶ 4, 7.)[1] Defendant State Farm Mutual Automobile Insurance Company ("State Farm") issued a policy of motor vehicle liability insurance to the Plaintiff on or about July 19, 2001, which was also in effect at the time of the accident. (Compl. ¶ 5.)

When Plaintiff submitted an uninsured motorist claim to Liberty Mutual, Liberty Mutual informed Plaintiff the available uninsured motorist coverage was $70,000. (Compl. ¶ 10.) Plaintiff brought a declaratory judgment action [Doc. 6.] in Norfolk Circuit Court seeking a declaration that the available uninsured motorist coverage is equal to the policy's $2 million liability limits. Liberty Mutual removed the action to this court on September 25, 2007. Daniel Prince was joined as a party on March 21, 2008.

Liberty Mutual filed their motion for summary judgment on July 22, 2008. During a telephone conference call on July 23, 2008, counsel informed the undersigned that there were no facts

---

[1] References in this Report and Recommendation to "Compl." are references to the Complaint for Declaratory Judgment which was removed to this court, and is attached to Document 6 in the court's file. The complaint attached to the Notice of Removal is not at issue in this court, rather it is the complaint for the underlying tort action filed in Circuit Court, and was inadvertently attached to the Notice of Removal.

in dispute, and requested that the case be decided on cross-motions for summary judgment. Plaintiff filed a motion for summary judgment on July 25, 2008, and filed a motion to strike the affidavit of Patrick Wasson on August 1, 2008. On September 15, 2008, an order was entered referring the motions to the undersigned for a Report and Recommendation.[2] A hearing was held on October 21, 2008. Martin A. Thomas, Esq., represented Linda Jarrell-Henderson. Blair E. Smircina, Esq., represented Daniel Prince. Nancy D. Adams, Esq., and Rebecca R. Geller, Esq., represented Liberty Mutual. Robert B. Rigney, Esq., represented State Farm. The Official Court Reporter was Paul McManus.

## II.    MOTION TO STRIKE THE AFFIDAVIT OF PATRICK WASSON

Preliminarily, the court must decide Plaintiff's motion to strike the affidavit of Patrick Wasson, offered in support of Liberty Mutual's response to Plaintiff's motion for summary judgment. (Def's. Resp., Attachment 1 [Doc. 33] ("the Affidavit").) Plaintiff filed a motion to strike the Affidavit for the following five reasons: (1) the Affidavit was not sworn under oath; (2) during Mr. Wasson's deposition, counsel for Liberty Mutual made no inquiry into the subject matter of the Affidavit; (3) a request for production of documents was attached to the notice of Mr. Wasson's deposition which covered the documents attached as Exhibit A to the Affidavit, however, the documents were not produced prior to or during Mr. Wasson's deposition; (4) the documents in Exhibit A were not disclosed during Liberty Mutual's Rule 26(a)(1) initial disclosure; and (5) the documents in Exhibit A were not disclosed in Liberty Mutual's Rule 26(a)(3) disclosure of witnesses and exhibits to be used at trial. Counsel for Plaintiff abandoned the first reason at oral argument,

---

[2] While the referral order [Doc. 38] only mentions the motion to strike, the cross-motions for summary judgment were also referred to the undersigned.

agreeing that the Affidavit meets the requirements of Rule 56(e)(1) that an affidavit be sworn under oath.  Counsel's second argument, that counsel for Liberty Mutual failed to inquire into the subject matter of the Affidavit during  Mr. Wasson's deposition, lacks merit.  It is not incumbent on counsel defending a discovery deposition to elicit testimony on a subject not covered by counsel taking the deposition.

The remaining three arguments in the motion to strike concern Exhibit A to the Affidavit. Liberty Mutual's failure to disclose these documents prior to responding to Plaintiff's summary judgment motion should preclude their use for purposes of deciding the cross-motions for summary judgment.  Liberty Mutual was required to produce the documents attached to the Affidavit in response to  Plaintiff's Request for Production of Documents at Deposition, which was served on Liberty Mutual along with the Notice of Mr. Wasson's deposition. (Pl.'s Mot. to Strike, Ex. A.) Plaintiff requested "[a]ll Declaration Pages and Virginia Uninsured/Underinsured Election Forms for policy number AS2-631-004074-536 or preceeding policies issued to IKON Office Solutions, Inc. for all policy years from 2002 through and including 2005." Id.  Counsel for Liberty Mutual asserts the documents at Exhibit A are "schedules" and not "declarations," and therefore, were not responsive to the request.  However, the pages are labeled "Declarations" and describe the amount of UM coverage provided by the policy. (Ex. A to the Affidavit, LM00566-LM00572.[3])  The documents were clearly responsive to the request to produce.

Further, the documents were neither disclosed during Liberty Mutual's Rule 26(a)(1) initial disclosure nor disclosed in Liberty Mutual's Rule 26(a)(3) disclosure of witnesses and exhibits to be

---

[3] References in this Report and Recommendation to "LM00___" are references to the Bates stamp numbers located in the bottom right corner of the documents.

4

used at trial; therefore, the documents should not be considered in ruling on the cross-motions for summary judgment. (Pl.'s Mot. to Strike, Ex. B and C.)[4]  Rule 37(c)(1) provides  "[a] party that without substantial justification fails to disclose information required by Rule 26(a) ... is not, unless such failure is harmless, permitted to use as evidence at trial, at a hearing, or on a motion any witness or information not so disclosed." Fed. R. Civ. P. 37(c)(1). It is the burden of the party facing sanctions to show that the failure to comply was either substantially justified or harmless. See Carr v. Deeds, 453 F.3d 593, 602 (4th Cir. 2006); Southern States Rack & Fixture, Inc. v. Sherwin Williams, 318 F.3d 592, 596 (4th Cir. 2003).   A district court has "broad discretion to determine whether a nondisclosure of evidence is substantially justified or harmless," Carr v. Deeds, 453 F.3d. at 597, and is guided by five factors: (1) surprise of the other party; (2) ability to cure the surprise; (3) extent of disruption if allowed; (4) importance of the evidence; and (5) explanation of failure (including potential bad faith). Southern States, 318 F.3d at 597.

In this case, the first three factors were exacerbated by the unique posture of the case at the time the documents were disclosed.  Counsel for both sides had completed discovery, and had informed the court that as no facts were in dispute, the court should decide the case based on cross-motions for summary judgment.  Further, Liberty Mutual and the Plaintiff had both filed their motions for summary judgment with supporting documents at the time these documents were first disclosed to the Plaintiff.  As discussed more fully below, counsel for the Plaintiff believed this evidence to be extremely important, if not dispositive.  Lastly, Liberty Mutual's explanation for not disclosing

---

[4] In its Rule 26(a)(3) pretrial disclosures, Liberty Mutual lists as an exhibit, "4. Declarations Pages for policy years 2002 through 2007 (LM00448-LM00467)." (Pl.'s Mot. to Strike, Ex. C.)  The documents attached to the Affidavit are Bates stamped LM00564-LM00572, and were not included in the exhibit list. (Def's. Resp., Attachment 1, Aff. of Patrick Wasson, Ex. A.)

Exhibit A, that the documents were considered schedules as opposed to declarations, does not excuse the late disclosure.  Liberty Mutual has not met their burden of showing that the failure to disclose these documents to the Plaintiff was substantially justified or harmless.  On the other hand, Plaintiff never requested the information contained in the substantive paragraphs of Mr. Wasson's deposition during discovery and never questioned Mr. Wasson about this topic during his deposition.  Therefore, the court should GRANT the motion to strike Exhibit A to Patrick Wasson's Affidavit, and DENY the motion to strike the substantive paragraphs contained in the Affidavit.

### III.  STANDARD FOR SUMMARY JUDGMENT

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine issue as to any material fact and the . . . moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). For the evidence to present a "genuine" issue of material fact, it must be "such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In deciding a motion for summary judgment, the Court must view the facts, and inferences to be drawn from the facts, in the light most favorable to the non-moving party. Id. 477 U.S. at 255.  In other words, the moving party's submission must foreclose the possibility of the existence of facts from which it would be open to a jury to make inferences favorable to the non-movant. Id.

Either party may submit as evidence "pleadings, depositions, answers to interrogatories, and admissions on file, together with . . . affidavits" to support or rebut a summary judgment motion. Fed. R. Civ. P. 56(c).  Rule 56 mandates a grant of summary judgment against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322

6

(1986).  With these controlling principles in mind, the Court turns to the merits of the cross-motions for summary judgment.

## IV.  ANALYSIS

The court must determine whether Ikon made a valid notification under Virginia Code § 38.2-2202 of its decision to purchase the statutory minimum uninsured motorist coverage from Liberty Mutual.   Virginia Code § 38.2-2202 requires an issuer of an auto insurance policy to provide uninsured and underinsured motorist (collectively "UM") coverage in limits equal to the limits of liability insurance provided by the policy, unless the insured rejects that level of coverage and chooses to purchase a lesser amount of UM coverage "by notifying the insurer as provided in subsection B of 38.2-2202."  Va. Code Ann. § 38.2-2202(A) (2008).  Subsection B requires that each "new policy or original premium notice of insurance" include a statement advising the insured that:

> [y]our total premium charge for your motor vehicle insurance coverage will increase if you do not notify your agent or insurer of your desire to reduce coverage within 20 days of the mailing of the policy or the premium, as the case may be.  The insurer may require that such a request to reduce coverage be in writing.

Va. Code Ann. § 38.2-2202(B) (2008).  The statute does not require the insurer to include this statement in renewal policies. Va. Code. Ann. § 38.2-2202(A) (2008).  Once an insured has reduced the level of UM coverage, the waiver and reduction of coverage remains in effect during subsequent renewals of the policy. USAA Cas. Ins. Co. v. Alexander, 445 S.E.2d 145 (Va. 1994).

It is undisputed that Ikon notified Liberty Mutual of its desire to reduce UM coverage to the minimum allowed by law.  Nevertheless, Plaintiff asserts Ikon's UM coverage equaled the limits of the insurance policy of $2,000,000 at the time of the accident because Ikon's notification failed to comply with the Virginia statute in the following ways: (1) the 2002 notification was executed more

7

than twenty days after the mailing of the notification form to Ikon (Def.'s Mem. in Support of Mot. for Sum. Judg. at 5); (2) the 2002 notification was ambiguous due to Ikon's failure to check one of the boxes to indicate they intended to make an election as to the UM coverage (Id.); and, (3) the 2006 notification was made more than twenty days after the mailing of the policy to Ikon (Id. at 6). Plaintiff's argument is unpersuasive.

### A. <u>Undisputed Facts Concerning Ikon's Notification to Liberty Mutual</u>

Ikon first obtained a business automobile policy from Liberty Mutual for the policy period of April 1, 2002, through April 1, 2003. (Adams Aff. Ex. B, LM 00448.) In 2002, Ikon's broker provided Liberty Mutual with an "Insurance Submission" with specifications for automobile liability coverage. (Adams Aff. Ex. D, LM00482.)  With respect to UM coverage, the submission stated, "reject in states where allowable otherwise minimum statutory." Id.  Patrick Wasson, the account representative for the Ikon account explained, "when I wrote the policy for its first inception, which was 4/1/2002, the request from the broker was to provide minimum or statutory benefits in all states allowed.  And that's the policy we issued." (Adams Aff. Ex. C, Wasson Deposition pp. 18-19.)

By letter dated April 3, 2002, Liberty Mutual sent Ikon UM coverage forms for a number of states, including Virginia, for the policy period of April 1, 2002, through April 1, 2003. (Adams Aff. Ex. E.)  The letter stated,

> You have indicated that you would like to reject and/or select the state minimum for which I have preselected in pencil for your convenience.
>
> Please feel free to erase and make other selections. ..."

Id.  The Virginia form, entitled "Important Notice - Virginia Uninsured/Underinsured Motorist Insurance," explained the statutory requirements of Virginia's UM statute. (Adams Aff. Ex. F.) Mr.

W. J. Hope, Jr.,on behalf of Ikon, executed the Virginia form more than twenty days later, on April 26, 2002. Id. Mr. Hope left blank the box which stated, "I wish to elect Uninsured/Underinsured Motorist Coverage at:," but did check the box below labeled "$70,000 Single Limits." Id.

Ikon renewed this policy each year through at least April 1, 2007. (Adams Aff. Ex. B, LM00448-467.)  On May 10, 2005, Mr. Hope, on behalf of Ikon, instructed Liberty Mutual as follows:

> Karen – this follows our telephone conversation earlier today.  The UM/UIM forms we submitted for the captioned period indicated that, where possible, Ikon would waive UM/UIM coverage and, in cases where a waiver is not allowed, select the minimum UM/UIM limits allowed by law. . . .

(Adams Aff. Ex. G.)

In connection with the April 1, 2006, renewal of the business automobile policy, Liberty Mutual prepared a coverage proposal indicating the "statutory minimum" limits for UM coverage. (Adams Aff. Ex. H.) On May 31, 2006, Liberty Mutual sent Ikon the Virginia UM coverage form notifying Ikon of its right to reject increased UM coverage. (Adams Aff. Ex. I.) Mr. Hope, on behalf of Ikon, executed the form on June 12, 2006, checking the box to indicate, "I wish to elect Uninsured/Underinsured Motorist Coverage at:," and checking the box next to "$70,000 Single Limits." (Adams Aff. Ex. I.)  The April 1, 2006, through April 1, 2007, policy shows a date issued of June 8, 2006. (Adams Aff. Ex. A, LM00002.)  The declarations page for the April 1, 2006, through April 1, 2007, policy indicates the UM coverage in Virginia is $70,000. (Adams Aff. Ex. A at LM00017.)

The accident causing plaintiff's injuries occurred on November 7, 2006.

B. **Timeliness of Ikon's 2002 Notification**

Plaintiff asserts Ikon's failure to return the 2002 UM form within twenty days, combined with Ikon's failure to check all necessary boxes on the UM form, renders the 2002 notification invalid and ineffective. It is undisputed that Ikon executed the UM form more than twenty days after the form was mailed to Ikon. Liberty Mutual asserts, however, that Ikon executed the UM form within twenty days of the issuance of the 2002 policy.[5] Def.'s Mot. for Sum. Judg. at 12 n.2. For purposes of the summary judgment motions, it is not necessary to determine whether the 2002 notification was made timely. Even if the failure to return the form within twenty days of the mailing made the notification untimely for the first year of the policy, both the Virginia Supreme Court and the Fourth Circuit have held that an untimely notification in one year is a valid notification for subsequent years. See Government Employees Ins. Co. (GEICO) v. Hall, 533 S.E.2d 615, 618 (Va. 2000); Ins. Co. of North America v. MacMillan, 945 F.2d 729, 731-32 (4th Cir. 1991).

In GEICO, the insured had an insurance policy which renewed each September. GEICO v. Hall, 533 S.E.2d at 352. Each July, GEICO mailed a UM coverage form allowing the insured to select lower UM coverage. Id. In 1992, the insured executed the form more than twenty days after it had been mailed. Id. No further UM coverage forms were returned, and GEICO continued to provide UM coverage at the reduced rate. Id. at 353. In 1997, an accident resulted in injuries and a claim for UM coverage. Id. at 352. The trial court found that the 1992 waiver form was ineffective

---

[5] The "date issued" on page one of the declarations page for the policy covering April 1, 2002, through April 1, 2003, is July 15, 2002. (Adams Aff. Ex. B, LM00448.) Mr. Wasson explained that the "date issued" represents "the date the policy was actually produced or completed" . . . the "final policy was assembled, all endorsements added, everything included, and it being printed in the hard copy and shipped out to the customer, the broker, whoever would get a policy." (Adams Aff. Ex. C, Wasson Depo. pp. 14-15.)

to reduce UM coverage, and required GEICO to pay the liability limits. Id. at 353.  Reversing the trial court, the Virginia Supreme Court held Virginia Code § 38.2-2202(B), requiring notice within twenty days of mailing to reduce UM coverage, does not apply to renewal policies. Id. at 355.  Therefore, the 1992 notification effectively reduced UM coverage for the 1997 policy which was in effect at the time of the accident. Id. at 356.

Similarly, in MacMillan, the insured signed a notification selecting minimum UM coverage on September 20, 1986, more than twenty days beyond the issuance of the policy on July 1, 1986. MacMillan, 945 F.2d at 731.  The court held the September 20, 1986, notification was valid to reduce coverage when the policy renewed on July 1, 1987. Id. at 732.  Once an insured has reduced the level of coverage, the waiver and reduction of coverage remains in effect during subsequent renewals of the policy. Id. See also USAA Cas. Ins. Co. v. Alexander, 445 S.E.2d 145 (1994). Therefore, even if Ikon's April 26, 2002, notification was not timely for the 2002-2003 policy year, it was timely for subsequent renewals of the policy, including the 2006 renewal which was in effect at the time of the accident.

C.  **Sufficiency of Ikon's 2002 Notification**

Plaintiff asserts Ikon's April 26, 2002, notification was ambiguous and invalid due to Ikon's failure to check the predicate statement indicating an intent to make an election as to the UM coverage.   On the UM coverage form, Ikon left blank the box which stated, "I wish to elect Uninsured/Underinsured Motorist Coverage at:," but did check the box below labeled "$70,000 Single Limits." Id. Plaintiff relies on two Fourth Circuit cases where the court found no actual rejection of UM coverage had occurred.   In White v. National Union Fire Insurance Co. of Pittsburgh, Pennsylvania, 913 F.2d 165, 166 (4th Cir. 1990), the insured signed and returned a

11

notification form for Virginia without checking any option for coverage, while returning forms for forty-seven other states rejecting UM coverage where possible and choosing the minimum coverage in states that required UM coverage.[6]   The court held, "[i]nformation that supports an inference by the insurer that the insured intends to reject a default level of coverage does not suffice, under Virginia law, as an actual 'rejection' of that coverage." Id. at 169.   In Bray v. Ins. Co. of the State of Pa., 917 F.2d 130 (1990), the insured was not notified of its UM coverage options, and made no specific rejection.   The court found the insured's acceptance of a policy with UM coverage below that required by the Virginia statute was not an actual rejection of higher UM coverage in Virginia, and required UM coverage equal to the liability coverage. Id. at 133.   Unlike the insureds in these two cases, Ikon did check the box to indicate $70,000 Single Limits on the Virginia UM coverage form. Therefore, the fact pattern is more closely analogous to the Fourth Circuit's decision in MacMillan which was decided one year after White and Bray. MacMillan, 945 F.2d at 729.   In MacMillan, the Fourth Circuit held a notification specifically rejecting all UM coverage was a valid notification even though Virginia required minimum UM coverage. Id. at 731-32.   The court distinguished White and Bray, because the insured explicitly, not merely inferentially, rejected all UM coverage. Id. at 731. Further, the court found the renewal policy contained an endorsement providing for minimum UM coverage in Virginia, thereby erasing the defect in the notification of total rejection of UM coverage. Id. at 732.   By checking the box indicating $70,000 Single Limits on the 2002 UM coverage form, Ikon was specifically rejecting higher UM coverage.   Further, the 2006 policy provided for $70,000 Single Limits UM coverage in Virginia, erasing any defect in the 2002 notification.

---

[6] Because the applicable Virginia statute, §38.1-380.2(B), which has since been repealed, required a waiver of UM coverage for renewal policies, the Fourth Circuit held the insurer could not rely on a prior waiver form. White, 913 F.2d at 169.

The Western District has also refused to require "hypertechnical" compliance with the Virginia statute.  The court rejected plaintiff's argument that a UM coverage form was ambiguous where an insured checked a box electing "Financial Responsibility Limits." Arnold v. Liberty Mut. Ins. Co., 866 F. Supp. 955, 957 (W.D. Va. 1994).  The court held the notification was valid, explaining,

> [s]ubstantial compliance with the law is all that is required. . . . After having been given the option of choosing between "financial responsibility limits" and policy limits, an insured that selects "financial responsibility limits" has fairly rejected limits.  Any other conclusion would demand hypertechnical compliance, not substantial compliance.

Id. at 958.  Ikon checked the box indicating $70,000 Single Limits on the 2002 UM coverage form for Virginia, substantially complying with the statute's requirement that Ikon notify Liberty Mutual of its desire to reduce UM coverage.

Lastly, Virginia courts have acknowledged that the mutual intent of the parties is instructive when determining whether a notification has effectively reduced UM coverage.  See GEICO v. Hall, 533 S.E.2d at 618. See also Price v. Zurich American Ins. Co., No. CL02-1009, 2003 WL 24179583 (Va. Cir. Ct. Dec. 17, 2003) (applying the holding in GEICO v. Hall to a fact pattern similar to Ikon's).  In addition to checking the box for $70,000 Single Limits on the UM coverage form in 2002, Ikon notified Liberty Mutual of Ikon's desire to reduce the UM coverage on the following occasions: (1) in the 2002 Insurance Submission (Adams Aff. Ex. D, LM 00482); (2) verbally during the negotiation and placement of the 2002 policy (Adams Aff. Ex. C, Wasson Depo at p. 18); (3) in a May 10, 2005, email (Adams Aff. Ex. G): (4) in the coverage proposal for the 2006 policy (Adams Aff. Ex. H); and, (5) by checking the predicate statement as well as checking the box for $70,000 Single Limits on the UM coverage form in 2006 (Adams Aff. Ex. I).  Consistent with these

notifications, Liberty Mutual issued a policy for 2006 through 2007 listing UM coverage in VA for $70,000 Single Limits. (Adams Aff. Ex. A, LM00017.)  There is clear evidence of a mutual intent to sell and purchase UM coverage at the statutory minimum.

Plaintiff attempts to distinguish the holdings in GEICO v. Hall and Price v. Zurich by asserting Liberty Mutual has provided no evidence that Ikon paid a reduced premium in exchange for reduced UM coverage, a factor relied on in both of these Virginia cases. (Pl's. Mot. for Sum. Judg. at 8.)  In response, Liberty Mutual offers the Affidavit of Patrick Wasson, the account executive responsible for the Ikon account.  In the Affidavit, Mr. Wasson reiterates his statement during his deposition that Ikon requested minimum or statutory UM benefits in all states allowed, and that is how the policy was written. (Id. at ¶ 3; Adams Aff. Ex. C, Wasson Deposition pp. 18-19.)  He adds in the Affidavit that the premium was calculated based on this request for minimum coverage. (Id. at ¶ 3.)  He further states that if Ikon had requested limits or coverages in excess of those statutorily required, the premium would have been increased accordingly.(Id. at ¶ 4.) Counsel for the Plaintiff conceded at oral argument that if the Court were to consider this evidence regarding reduced premiums, Liberty Mutual would succeed on their motion for summary judgment.  If the district court follows this recommendation with respect to the motion to strike, and considers the substantive paragraphs in Mr. Wasson's deposition regarding reduced premiums, summary judgment in favor of Liberty Mutual is clearly appropriate.  However, even if the Court decides to grant the motion to strike the affidavit of Patrick Wasson in its entirety, and evidence of reduced premiums is not considered, the remaining evidence conclusively shows Ikon effectively notified Liberty Mutual of the desire to reduce UM coverage in Virginia to $70,000 Single Limits by complying with the requirements of Virginia Code § 38.2-2202.  Thus, granting summary judgment in favor of Liberty Mutual is appropriate in either

14

case.

## IV.  RECOMMENDATION

For the foregoing reasons, the Court recommends that Liberty Mutual's motion for summary judgment be GRANTED, Plaintiff's motion for summary judgment be DENIED, and Plaintiff's motion to strike the affidavit be GRANTED as to Exhibit A of the Affidavit and DENIED as to the substantive paragraphs in the Affidavit.  Further, the court should enter judgment declaring that, under Ikon's automobile insurance policy with Liberty Mutual, the UM coverage in effect at the time of the accident was $70,000 Single Limits.

## V.  REVIEW PROCEDURE

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within ten (10) days from the date of mailing of this report to the objecting party, see 28 U.S.C. § 636(b)(1)(C), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure, plus three (3) days permitted by Rule 6(e) of said rules. A party may respond to another party's objections within ten (10) days after being served with a copy thereof.

2. A district judge shall make a de novo determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in waiver of right to appeal from a judgment of this court based on such findings and recommendations. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466, 88 L.

Ed.2d 435 (1985); <u>Carr v. Hutto</u>, 737 F.2d 433 (4th Cir. 1984), <u>cert. denied</u>, 474 U.S. 1019 (1985);

<u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir.), <u>cert. denied</u>, 467 U.S. 1208 (1984).


                                                         /s/
                                       Tommy E. Miller
                              United States Magistrate Judge

Norfolk, Virginia
November 19, 2008

## CLERK'S MAILING CERTIFICATE

A copy of the foregoing Report and Recommendation was mailed this date to each of the

following:

Martin A. Thomas, Esq.
Decker, Cardon, Thomas, Weintraub & Neskis, P.C.
109 E. Main St.
Suite 200
Norfolk, VA 23510

Blair E. Smircina, Esq.
Kalfus & Nachman
P.O. Box 12889
Norfolk, VA 23541-0889

Anthony T. Abbenante, Esq.
David Barmak, Esq.
Helen G. Guyton, Esq.
Nancy D. Adams, Esq.
Rebecca R. Geller, Esq.
Mintz, Levin, Cohn, Ferris, Glovshy and Popeo, P.C.
701 Pennsylvania Avel, NW
Suite 900
Washington, DC 20004

Robert B. Rigney, Esq.
Protogyrou & Rigney PLC
215 E. City Hall Ave.
P.O. Box 3205
Norfolk, VA 23510

Fernando Galindo, Clerk


By _____
      Deputy Clerk
      November        , 2008